Caruteers, J.,
delivered the opinion of the Court*
The complainant is the widow of Abner Gupton, sr., who-died in Montgomery county,, in August, 1859, the owner of 10,000 acres of land, supposed to be worth $200,000, about one hundred slaves, a large sum of money, and other personal property. He made his will, from which the complainant dissented, in proper time. The deceased had no children by the complainant, but several by a former wife — perhaps as many as five.
She filed this bill to obtain dower in the land, and a distributive share cf the personal est-ate of her husband.
By demurrer to the bill, the question is raised as to her right to any part of the personalty. This depends upon the construction of the Code, sections 2404 and 2429*
*489 The last section embodies the then existing laws, and constitutes the “ statute of distributions,” in cases of intestacy. According to that, the widow, when there are children, which is this case, is to take a “child’s share.” But this is not a ease of intestacy, and therefore must be governed by section 2404, which is;
“ Where a satisfactory provision, in real or personal estate, is not made for her.she shall signify her dissent, in open Court, within one year, after the probate of the will,” in which case, she shall he endowed as if her husband had died intestate.”
The part of the act of 1784, which extended her right, in such a case, to a child’s part of the personalty, is omitted, either by mistake or because it was intended by the use of the word endowed, to cover and secure to her the provision of the old act. We are bound, however, to seek the intention of the Legislature, through what they have written, and enforce that. But, in the construction of their language, we must necessarily, in cases of ambiguity, look outside of the letter, and the technical meaning of words, as well as their literal import, to the subject matter and object in view, to ascertain their purpose and intention. It cannot be presumed, by any one, that it was intended to allow the widow nothing, in cases of dissent, but her dower in the land. That would enable her husband to deprive her of any part of his estate, in, case he left no land, although he might be worth a million in money, stocks, or other personalty.
This would be the inevitable consequence, if the word “endowed ” should be construed as a technical term, and confined to the act of assigning “ dower.” But the word endoio is not so limited in its meaning. Webster and Richardson, in their Dictionaries, define it thus: to give; to bestow; to furnish with a portion of goods or estate; to settle on, as a permanent possession; to furnish with a permanent fund or property. The old marriage ceremony of England concluded with the words, “with all my worldly goods I do thee endow.” It is the word applied to the provision made or fund set apart *490 for the support of literary and charitable institutions; as when we say a college, or hospital is s‘ endowed.”
So, we see, that the word endow, or endowed, is not limited to the technical sense of giving “ dower.” It has a larger scope than that. To what it shall extend, then, is a matter of construction in reference to the object for which it was used, and the connection in which it is found.
In this section, it must mean something more than a provision out of real estate. If it did not, as we have before stated, the privilege of dissenting would not benefit the widow where the husband’s estate consisted only of personalty. But she is allowed to resort to her legal rights, in despite of the will, where satisfactory provision is not made for her out of the real or personal estate. It was intended to secure to her an election between the provision made for her by the law of her husband, and the law of the land. It was intended that he should not have the power to deprive her of a just and proper share of an estate which she may have aided in building up. She has a right to stand upon the law, and participate in his estate, whether he is willing or not. We will not defeat that right, and render this provision nugatory, unless we are compelled to do so.
We have, in several cases, given this word, and even the word dower, in deeds, the enlarged signification.
We have no idea that the Legislature intended, by this section, to do so absurd a thing as to exclude the dissenting widow from all interest in the personal estate, and confine her to a mere life estate in a third of his land, if he should, fortunately, have any. It cannot be supposed that, in pretending to place her on the high ground of independence of her husband’s will, in regard to the part of his estate allowed her by the laws of the land, she should be tied down to a technical dower in the realty.
We have no difficulty in expounding, and that upon sound reason and authority, the word “endowed’’ so as to embrace the personal estate, and allow her to participate in that, ac *491 cording to the section for the distribution of intestates’ estates.
It is not now necessary to meet the strong case put in argument, of a man dying without children, in which, by the recent law, in cases of intestacy, the widow takes the whole personal estate, because, in cases where there are no children, the act of 1784 and the Code are the same in cases of dissent. When such a case arises, and it never may — as we understand the present Legislature have made an amendment of the law on the subject — it will be time enough to consider whether it shall be governed by the act of 1784 and subsequent acts, limiting her rights to a part, or the more recent enactment giving her the whole.
The judgment of the Chancellor, overruling the demurrer to the widow’s bill, is therefore affirmed; and the case will be remanded for such proceedings as will put the widow in possession of her rights, as we have herein disclosed them.